UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JESUS BELTRAN,

      Petitioner,

v.

                                  Case No.:  2:26-cv-01228-SPC-NPM

EVERGLADES DETENTION
FACILITY,

      Respondent.

_____/

## <u>OPINION AND ORDER</u>

Before the Court are petitioner Jesus Beltran's Petition for Writ of Habeas Corpus (Doc. 1) and the government's response (Doc. 3).

Beltran is a native of Cuba who was paroled into the United States on January 26, 1995.  On March 6, 1996, he was convicted of aggravated battery with a deadly weapon.  He was then convicted of petit theft on October 17, 2001.  On July 11, 2007, an immigration judge ordered Beltran removed to Cuba.  Immigration and Customs Enforcement ("ICE") was unable to execute the removal order, so it released Beltran under an order of supervision.  On December 2, 2025, ICE revoked the order of supervision, arrested Beltran, and detained him at Alligator Alcatraz.  Cuba again refused to accept Beltran for repatriation.  On March 9, 2026, ICE took a group of noncitizens—including Beltran—to the U.S.-Mexico border and instructed them to disembark and

cross into Mexico. Beltran stayed on the bus, and ICE returned him to Alligator Alcatraz. Beltran challenges the legality of his continued detention.

Before addressing the merits of Beltran's claim, the Court must address its jurisdiction. The government argues two sections of the INA strip the Court of jurisdiction over this action. It first points to a provision that bars courts from hearing certain claims::

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action

being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The government also raises the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  The zipper clause only applies to claims requesting review of a removal order.  *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Beltran does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order.  Nor does he ask the Court to review the removal order.  Rather, Beltran challenges the legality of his detention under a framework devised by the Supreme Court for district courts to apply.  *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review.").  A decision in

Beltran's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

The Court turns to the merits of Beltran's habeas claim. "Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas v. Davis*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. 678, 700–01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Supreme Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months— the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.*

The government argues Beltran's petition is premature because his current detention has not exceeded 180 days. They assume a six-month presumptively reasonable period of detention starts each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Beltran has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Cuba recently refused to accept him for repatriation.

The burden thus shifts to the government.  ICE points to its March 2026 attempt to send Beltran to Mexico.  But the evidence before the Court suggests that was an informal effort to compel voluntary departure, not an above-board removal attempt that complied with statutory and constitutional requirements.  *See Andriasian v. Immigr. and Naturalization Servs.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."); *see also D.V.D. v. U.S. Dep't of Homeland Security*, --- F. Supp. 3d ---, 2026 WL 521557 (D. Mass. Feb. 25, 2026) (setting aside DHS's current third-country removal policy because it violates noncitizens' right to seek fear-based relief under the Convention Against Torture).  ICE makes no attempt to show it can lawfully remove Beltran in the reasonably foreseeable future.

The Court finds there is no significant likelihood of removal in the reasonably foreseeable future.  However, assuring the presence of a noncitizen at the moment of removal is not the only statutory justification for immigration detention.  "The second justification—protecting the community—does not necessarily diminish in force over time." *Zadvydas*, 533 U.S. at 690.  The Supreme Court has "upheld preventative detention based on dangerousness only when limited to specially dangerous individuals and subject to strong

procedural protections." *Id.* Given Beltran's criminal history, the Court will give ICE an opportunity to determine whether his detention is necessary to protect the community.

Accordingly, it is hereby **ORDERED:**

Jesus Beltran's Petition for Writ of Habeas Corpus (Doc. 1) remains under advisement.

1.  Within 30 days of this Order, ICE shall conduct a custody review to determine whether Beltran poses a danger to the community sufficient to justify continued detention.

2.  Within seven days of the custody review, the government shall file a supplemental response, addressing the results of the review and any updates on removal efforts.

3.  Beltran may file a reply within three days of the supplemental response.

**DONE AND ORDERED** in Fort Myers, Florida on May 5, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record